EQUITABLE MORTG. CO. v. LOWRY et al.

(Circuit Court, N. D. Texas. February 4, 1893.)

No. 203.

1. HOMESTEAD—DESIGNATION—CONTIGUOUS TRACTS—INCUMBRANCES.

A husband and wife owned and lived with their family upon, and used as one tract, three tracts of land containing 133, 280, and 5 acres, respectively, all adjoining. The 133-acre and the 5-acre tracts constituted, with a small parcel of the 280 acres, between them a continuous body of land. They also owned a tract of 59.82 acres in the same county, but at a distance of three fourths of a mile from the land on which they lived. The husband made a written designation of the 133-acre, the 5-acre, and 59.82-acre tracts as his homestead; the 280-acre tract being, at the time, under a mortgage. *Held,* that under the Texas statute the designation was effectual as to the 133-acre and the 5-acre tracts, and that a deed of trust thereof was invalid; but that it was ineffectual as to the 59.82 acres, and that a deed of trust thereof was valid.

2. SAME—MORTGAGE—ESTOPPEL BY REPRESENTATIONS.

Representations under oath, made by husband and wife for the purpose of obtaining a loan upon the security of their homestead lands, that the lands are not their homestead, but that other lands therein specified are, do not estop them from claiming their homestead exemption under the Texas statute, such representations being contrary to the visible and actual facts.

3. SAME—COLORABLE TRANSFER TO THIRD PARTY—MORTGAGE—SUBROGATION.

A husband and wife conveyed their homestead to a third party by general warranty deed for an expressed substantial consideration. The grantee borrowed money on the security of the lands. The agent of the lender knew that the conveyance to the borrower was only colorable; that the real interest in the land remained in the grantors, and that they continued to occupy the land as their homestead. The lands were reconveyed, and thereafter the husband and wife, by false representations that the lands were not their homestead, borrowed money upon them, a part of which the lender, at their request, applied in payment of the first loan. *Held* that, although the deed of trust to secure the latter loan was invalid, the lender was entitled to be subrogated to the debt and lien of the first lender, and that the knowledge of the agent of the latter was not imputable

to the former, as the payment of the first loan had been made by the second lender at the request of the owners of the homestead, and in ignorance of the facts as to the colorable conveyance.

In Equity. Bill by the Equitable Mortgage Company against James P. Lowry and others to foreclose a deed of trust on real property. Decree for complainant.

W. A. Bonner, for complainant.
McCormick & Spence, for respondents.

RECTOR, District Judge. In this cause it is admitted by the plaintiff and defendants—

That in May, 1883, James P. and Martha A. Lowry were the owners of about 413 acres of land on the John C. Bates, A. J. Heffner, and W. H. Sowell surveys, all in one body, and adjoining; that in 1883 J. P. Lowry and wife gave a deed of trust to the Texas Loan Agency upon the 280 acres out of the lower part of the J. C. Bates survey and the west end of the A. H. Heffner and W. H. Sowell surveys, colored green on the plat; that said deed of trust was renewed in 1885, and had not been paid, and was in force November 30, 1888; that on November 13, 1884, Martha A. Lowry and J. P. Lowry executed a general warranty deed to William Lowry, conveying to him the 133-acre tract out of the Bates survey and the 59.82-acre tract out of the Moore survey, colored yellow on the plat; that the consideration shown in said deed was $4,000 cash, paid by William Lowry, the grantee; that William Lowry, on January 15, 1885, executed a note for a loan of $1,300 from the J. B. Watkins Land Mortgage Company, and gave a deed of trust on the said 133-acre and the said 59.82-acre tracts to secure it; and that November 1, 1886, William Lowry conveyed the said 133 and 59.82 acre tracts back to M. A. Lowry, the consideration recited in the deed being $1,300, paid by M. A. Lowry, and the assuming payment of a certain mortgage for $1,300, dated January 1, 1885, given by William Lowry to the J. B. Watkins Land Mortgage Company; and that in October, 1887, James P. Lowry made a written designation, duly executed, acknowledged, and recorded, wherein he designated as his homestead the 133-acre tract out of the Bates survey and the 59.82-acre tract out of the Moore survey; that in November, 1888, when the loan was made by the Equitable Mortgage Company, J. P. Lowry and wife, M. A. Lowry, owned the 133-acre tract, the 280-acre tract, the 59-acre tract, and the 5-acre tract, but the deed of trust to the Texas Loan Agency on the 280-acre tract was still in force at that date.                    McCormick & Spence, Sols. for Defts.
                                       W. A. Bonner, Atty. for the Equitable Mort. Co.

In addition to the facts stated in the foregoing agreement of counsel, the court finds that James P. Lowry and his wife, Martha A. Lowry, on November 1, 1888, executed a note to the complainant for $3,450, with interest at 6 per cent., as shown by five coupons attached; that at the same time they executed to S. M. Finley a deed of trust upon the 133 acres of land, part of the John C. Bates survey, upon 59.82 acres of land, part of the James Moore survey, and on about 5 acres, part of A. J. Heffner survey, to secure the payment of said notes and coupons; that as an inducement to the payee to make the loan of said money James P. Lowry and his wife, Martha, represented to it, under oath in writing, that said land was not their homestead, but that other land, mentioning lots in the town of Campbell, was their homestead. The 59.82 acres, part of the James Moore survey, is in the same county with the land upon which James P. Lowry and his wife, Martha, lived, but separated three fourths of a mile from it. James P. Lowry and

wife, M. A. Lowry, at the time they executed said mortgage sued on by complainant, were actually (contrary to their representations to complainant) living with their family on said 133 acres, part of the John C. Bates survey, and were actually using the 280 acres, then under mortgage to the Texas Loan Agency, and the 5 acres, part of the A. J. Heffner survey; all constituting the 413 acres in one body. John I. Nicholson was the agent of the J. B. Watkins Land Mortgage Company in negotiating the loan to William Lowry of $1,300, January 1, 1885, and knew that the sale to William Lowry by J. P. Lowry and wife, the mortgage debt of $1,300 thereon, and the reconveyance back by William Lowry to Martha A. Lowry, were all devices to put a mortgage on the 133 acres of land out of the Bates survey on which J. P. Lowry and wife lived as a homestead. This mortgage to the J. B. Watkins Land Mortgage Company was paid by complainant out of the money sued for in this case. Martha A. Lowry, wife of James P. Lowry, died in 1890. Default having been made in the payment of the indebtedness of James P. Lowry and wife, this suit was brought to establish the same, and foreclose the deed of trust against James P. Lowry, the trustee, and the children of Mrs. Lowry.

There is no contest in the case except over the liability of the land for the debt sued on. Under the facts and issues joined, the following questions of law arise:

First. Was the land mortgaged by James P. Lowry and wife their homestead at the time of the deed of trust to complainant?

Second. If the land, or part thereof, so mortgaged was the homestead of Lowry and wife when mortgaged, did the false representations of Lowry and wife, made to complainant to induce it to make the loan, estop Lowry and wife from setting up the homestead in the land mortgaged?

Third. Will the payment of the debt by complainant of the J. B. Watkins Land Mortgage Company, amounting to $1,601.90, when paid, subrogate it to the lien of said indebtedness on the 133 acres and the 59.82 acres?

The constitution of the state of Texas provides that "no mortgage, trust deed, or other lien on the homestead shall ever be valid except for the purchase money thereof, or improvements made thereon, as hereinbefore provided, whether such mortgage or such trust deed or other lien shall have been created by the husband alone, or together with his wife; and all pretended sales of the homestead involving any condition of defeasance shall be void." Const. art. 16, § 50. The laws of the state provide "that the homestead of a family not in a town or city shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon: provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family." Article 2336, Rev. St. Tex.

1. On the first proposition the evidence seems clear that the 133-acre tract was the homestead of Lowry and wife, and when they executed the mortgage to secure the debt sued on in this

case they were then living on it, cultivating and using it, with their family, as a homestead. The small tract of 5 acres off of the A. J. Heffner survey had a gin on it, and some land in cultivation, and constituted, with the 133 acres, and a small tract between the 133 acres and the 5 acres, a continuous body of land. It may fairly be taken as a part of the homestead at the date of the mortgage. As to the 59.82 acres about three quarters of a mile off from the homestead, it was no part of the homestead at the date of the mortgage. There were 413 acres in a solid body in the home tract, all under fence, and being cultivated, or otherwise used by said Lowry and wife, when the mortgage was given by them. It is true there were 280 acres of the home tract under mortgage on November 1, 1888, to the Texas Loan Agency; and it is also true that in 1887 Lowry and wife had designated this 59.82 acres as part of their homestead. Such designations are not valid as against the patent fact in the case. A homestead is to be determined by the visible facts of use and enjoyment.

2. The 133 acres of the John C. Bates survey and the 5 acres of the Heffner being part of the homestead of Lowry and wife at the date of the deed of trust sought to be foreclosed thereon, this brings us to consider the effect of their declarations made to complainant that said land was not their homestead, but that lots 6, 7, 8, 9, and 10, in block 10, in the town of Campbell, were their homestead. There can be no doubt that the purpose of those declarations, which were untrue, was to induce the complainant to believe them, and thus obtain a loan on the homestead. The defendants were not estopped by their declarations in this case from setting up their homestead exemption. In Land Co. v. Blalock, 76 Tex. 89, 13 S. W. Rep. 12, Chief Justice Stayton, delivering the opinion of the court, says:

"The fact of actual possession and use as the home of the family was one against which the lender could not shut its eyes. Every person dealing with land must take notice of an actual, open, and exclusive possession; and where this, concurring with interest in the possessor, makes it a homestead, the lender stands charged with notice of that fact, it matters not what declarations to the contrary the borrower may make."

2. This brings us to the claim of complainant to be subrogated to the $1,300 debt of the J. B. Watkins Land Mortgage Company, and its lien on the 133 acres of land out of the Bates survey, on which James P. Lowry and wife lived, and also on the 59.82 acres out of the James Moore survey. As to this latter survey, there is no difficulty in allowing complainant to be subrogated to the debt and lien of the J. B. Watkins Land Mortgage Company thereon. As this 59.82 acres was never, in our view, the homestead of Lowry and wife, that fact leaves it subject to the lien of the debt sued on without invoking the doctrine of subrogation. The fact that John I. Nicholson was the agent of the J. B. Watkins Land Mortgage Company in negotiating the loan of $1,300 to William Lowry and in taking a lien on the 133 acres of land out of the Bates survey, and that he knew at the time he took said lien on said tract of land that it was in fact the homestead

of J. P. Lowry and wife, and that the conveyance to William Lowry by J. P. Lowry and wife, and reconveyance back to Martha A. Lowry by William Lowry, were all devices to put a lien on the homestead of Lowry and wife, it is insisted makes the lien on said 133 acres invalid in behalf of said J. B. Watkins Land Mortgage Company, and in behalf of any one who may be subrogated to the rights of said company. These facts, we think, would destroy the lien of said debt on the homestead tract of 133 acres of Lowry and wife in the hands of said Watkins Company.

A surety can ordinarily make such defenses as his principal could make, and when he pays the debts of his principal he is subrogated to all the rights of the creditor. The present, however, is not the case of a surety, but of a stranger to the debt of J. B. Watkins Land Mortgage Company against William Lowry, and assumed by Martha Lowry upon the reconveyance back to her by William Lowry of the said tract of 133 acres. Not only was complainant a stranger to the debt, but comes in at the instance of Lowry and wife, and pays it off. Pomeroy, in the third volume of his Equity Jurisprudence, (section 1212,) says:

"The doctrine of equitable assignment is also justly extended by analogy to one who, having no previous interest, and being under no obligation, pays off the mortgage, or advances money for its payment at the instance of a debtor party, and for his benefit."

The fact that Lowry and wife might have set up the claim of homestead in the said 133 acres of the Bates survey against the lien of the J. B. Watkins Land Mortgage Company debt, by reason of notice to said company, through its agent, that said land was the homestead of Lowry and wife when said debt was contracted, will not enable them to set up such claim against this complainant. There is nothing in the record to show that it had other knowledge of the debt or lien than what the county records show. There is nothing in the case to show that complainant had knowledge, when it paid off the J. B. Watkins Land Mortgage debt, of the devices adopted by Lowry and wife to put a mortgage on their homestead, which assumed the shape of a vendor's lien note in the reconveyance back to Mrs. Lowry. Heidenheimer v. Stewart, 65 Tex. 321; Hurt v. Cooper, 63 Tex. 363.

The court finds for complainant its debt, and that the lien thereof be foreclosed on the 59.82 acres out of the Moore survey as no part of the homestead when said debt was created. The court further finds that complainant is subrogated to the debt and lien of the J. B. Watkins Land Mortgage Company, and that same be foreclosed on the 133 acres of the John C. Bates survey. The court finds that the 5 acres of the Heffner survey, not being included in the mortgage to the J. B. Watkins Land Mortgage Company, is not liable for any of the debt sued on.