## WILSON v. PAULY.

(Circuit Court of Appeals, Sixth Circuit. January 13, 1896.)

### No. 300.

1. PRACTICE ON APPEAL—EXCEPTIONS APPEARING IN RECORD.

    It is not indispensable that an exception to a ruling of the court on the trial of an action should be brought before an appellate court by a bill of exceptions, if it fully appears upon the record proper.

2. BANKS—NOTICE—KNOWLEDGE OF OFFICERS.

    The receiver of the C. National Bank brought an action against one W. on certain promissory notes, made by him directly to the bank. W. defended the action on the ground that the notes were given for the purchase money of an interest in a brickyard, which W. had been induced to purchase by the misrepresentations of C., the president of the bank. It appeared that the bank held sundry notes of the principal owner of the brickyard, which notes were worthless; that the notes made by W. were substituted for these; and that C. pretended to be in-

terested, himself, in the brickyard, and to enter into a partnership with W. and the former owner of the yard, for the purpose of inducing W. to make the notes to the bank, which would replace the worthless notes it then held. There was also evidence tending to show that C. was the active party in the transaction, and misrepresented the facts to W. *Held*, that the bank, being the payee of the notes, could not be held to have been without notice of the fraud, or unaffected by C.'s knowledge thereof, and that it was error to direct the jury to render a verdict against W.

In Error to the Circuit Court of the United States for the District of Kentucky.

This was an action at law, brought in the court below by Frederick N. Pauly, defendant in error, as receiver of the California National Bank of San Diego, against William H. Wilson and Annie E. Wilson, upon four promissory notes, for the sum, in all, of $22,575, executed by them at San Diego, Cal., to the above-named bank on the 24th day of March, 1891, and payable in six months after that date. During the progress of the suit William H. Wilson died, leaving a will, and Annie E. Wilson was appointed executrix thereof, and the suit was thereupon revived against her as such.

Separate answers were filed in her behalf, personally, and as executrix. As executrix she pleaded: (1) That the notes sued on were executed as the price of the one-third interest in the Rose Canyon brickyard and kiln, situated at San Diego, Cal., of which one C. H. Hill claimed to be lessee from one A. G. Gasson, containing eighty acres, and the one-third interest in certain patents on kilns for burning brick, and the plant and personal property situated on said leased premises at the time (except brick which had been burned and finished), with the stipulation that the said Hill, J. W. Collins, and W. H. Wilson should enter into a coequal partnership for the manufacture and sale of brick at said yard and kiln. (2) That said Collins had for a long time been president of said California National Bank, of San Diego, Cal., and theretofore been associated with the said Hill in operating said yard and kiln, in the manufacture of brick at said yard and kiln for sale, upon an agreement to divide the profits of said business, and said Hill and Collins were partners in said business. (3) That said Collins had agreed with said Hill, for carrying on said business, to furnish the capital necessary, which he did by discounting the notes of said Hill in said bank, secured by the pledge of said patents, and there was, at the time of said agreement, an indebtedness existing against the said Hill to said bank, secured as aforesaid, to the amount of about $32,000. (4) That said Hill and Collins falsely and fraudulently represented to said Wilson, in making said agreement of purchase and partnership, that large profits had been made by them in the sale and manufacture of brick at said yard and kiln, and falsely and fraudulently represented that they had already unfilled orders for 6,400,000 bricks for the erection of a college building at or near San Diego, about 250,000 or 300,000 to be pressed, and the remainder common brick, the latter at $11 per 1,000, and the former at $35 per 1,000, and also orders from other sources, making, altogether, enough to run the yard for about 12 months, assuming the annual product would be 10,000,000 bricks,—all of which said representations, so made, were false and untrue, and so known to be by said Hill and Collins when so made. (5) That said notes were, at the request of said Collins, then the president of said bank, made payable to said bank, to be used in the payment of so much of the indebtedness of the said Hill to said bank, already existing and owing by him, and so much of the said debt of the said Hill was satisfied to the said bank, which was the only consideration moving from said bank for the execution of the said notes to it. (6) That during all the time while these transactions were going on, said Collins was the president of said bank, and that said bank had full notice and knowledge of the said contracts, and of the false and fraudulent representations of said Collins and Hill in the procurement of the execution of said notes, and is bound thereby. (7) That, not only were all of said false and fraudulent statements, stated in said representations, made to said W. H. Wilson by the said Collins and Hill, but were so made by them for the purpose of inducing him to believe and rely upon them, and that he did rely on said statements in making

said contract for the said interest in said yard and kiln, and also in the execution of the said notes, and each of them. That said interest in said property was and is valueless, and she prays that said contract may be vacated and held for naught.

To this the plaintiff replied, denying the principal matters set up as a defense by the plea. In her personal defense Mrs. Wilson pleaded similar matters of defense, and for a further defense she alleged that, at the time of the signing by her of the notes sued on, she was a married woman, the wife of the said William H. Wilson, and that she did not receive any part of the consideration for which said notes were executed; that they were given in the execution of a copartnership agreement in which her husband, William H. Wilson, C. H. Hill, and J. W. Collins were concerned, and were employed by William H. Wilson in the purchase of an interest in a brickyard and appurtenances, to be used for the purpose of carrying on the business of manufacturing brick, as stated in her answer as executrix.

The case was tried before a jury. At the conclusion of the evidence, counsel for the plaintiff moved the court to instruct the jury to find a verdict in his favor for the amount of the notes sued on, with interest, against the defendant as executrix and against her personally. The court instructed the jury to find a verdict in favor of the defendant personally, and against her as executrix. The record states that the defendant, as executrix, "objected and excepted" to such instruction. The jury returned the verdict directed, and assessed the damages at $27,044.84. Judgment was entered accordingly, and Mrs. Wilson, as executrix, brings the case here on writ of error.

J. O'Hara, for plaintiff in error.

D. W. Fairleigh and George W. Jolly, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

SEVERENS, District Judge (after stating the facts). Substantially the merits of the controversy on this writ of error are involved in the direction given by the court to the jury upon the trial to return a verdict against the plaintiff in error as executrix. But a preliminary question is raised by counsel for the defendant in error upon the sufficiency of the mode of saving the exception claimed to have been taken to the direction complained of; and it is urged that, in fact, no valid exception is exhibited by the record, and that, therefore, this court is not empowered to review the action of the circuit court in giving such direction. The bill of exceptions states that, at the close of the testimony, the plaintiff moved the court to instruct the jury to render a verdict against the defendant in her personal, as well as in her representative, character; that the defendant objected thereto; and that the court denied the motion as to the defendant personally, but sustained it against her as executrix. It then states that "the jury returned into court their verdict herein, and the court thereupon rendered the judgment set out heretofore in this record." But the bill states no exception to the action of the court in sustaining the plaintiff's motion for directions to the jury. However, the record proper shows that the above-mentioned motion of the plaintiff was filed, stating it in terms. It shows further, that the court took it under advisement until the following day, and then, "being fully advised," sustained it so far as it prayed for peremptory instructions against the defendant as executrix, and denied it as against her personally; that the defendant objected to that portion of the order sustaining the motion; that the court thereupon instructed the jury, in

accordance with the order thus settled, to find a verdict for the defendant personally, and against her as executrix, "to which instruction the defendant, Annie E. Wilson, executrix, objected and excepted."

It thus appears that, contrary to the usual course, all these proceedings in reference to the plaintiff's motion for positive instructions to the jury, the action of the court thereon, and the objection and exception of the defendant were made matter of record by entry upon the journal of the court. The position of the defendant in error is that it is indispensable that the exception should appear by the bill of exceptions, and that it cannot be shown by anything else. Numerous cases are cited in support of this proposition from the decisions of the supreme court of the United States and elsewhere. But those decisions were made in cases where the exceptions relied upon were shown by the transcript to have rested in the clerk's or judge's minutes, which had never become any part of the record. They were private memoranda, made at the moment, as a help to the recollection in future action, when it might become necessary to put the matter in authoritative form. Pomeroy v. Bank, 1 Wall. 596; Thompson v. Riggs, 5 Wall. 663; Insurance Co. v. Lanier, 95 U. S. 171; Hanna v. Maas, 122 U. S. 26, 7 Sup. Ct. 1055; Bank v. Eldred, 143 U. S. 298, 12 Sup. Ct. 450. The necessity for a bill of exceptions rests upon the fact that according to the customary course of practice in common-law cases, only the outline of proceedings at the trial is entered of record, such as that the case came on for trial, that the parties appeared, a jury was sworn, the evidence adduced, counsel were heard in argument, the jury instructed, and, after deliberation, rendered a verdict. Upon the transcript of such a record, sent up on the writ of error, the rulings and exceptions made or taken on the trial would not appear. This defect was supplied by the certificate of the judge, in the form of a bill of exceptions, which, when settled and filed, becomes an addition to the record, and part thereof, having equal authenticity with the record proper. Thereupon the court of review has the matter of the exceptions before it. As before stated, the judge's and clerk's minutes are no part of the record. They are not intended to be. Young v. Martin, 8 Wall. 354, and the cases above cited. The practice in the courts of the different districts, in the keeping of their records, and the extent to which the proceedings during trials are recorded, as well as in the form and style of entries, varies greatly. The court has a wide discretion, and quite ample authority to determine in what form the proceedings before it shall be recorded, provided, always, the rights of the parties are preserved. While it is true that the form in which the principal exception in this case was preserved is not the form employed in the old common-law practice, we cannot say that it was beyond the power of the court below to exhibit the exception in this way. It is nothing but a matter of form, and we do not think the court would be justified in ignoring a vital exception by standing on a rule the substantial reason for which, as we have shown, does not exist in the circumstances of the case.

Upon consideration of the evidence which was introduced by the parties, we think the court erred in taking the case from the **jury**

and directing a verdict for the plaintiff. There was evidence tending to prove, and, if believed, to have warranted the jury in finding, that Collins, who was the president of the bank of which Pauly was receiver, was the active, and, in all probability, the efficient, party in effecting the sale of the one-third interest in the brick-yard property, and in procuring the notes given by W. H. Wilson therefor to be made directly to the bank. There was evidence tending to prove, and from which the jury might have found, also, that the sale of the property to Wilson was effected by means of grossly untrue representations in regard to the value of the business in which the property was employed. The value of the purchase depended largely upon the volume and the profits and the good will of the business. According to some of the evidence, representations were made that the business was large, that the profits of the business were also large, and that the owner already had orders for 10,000,000 of brick,—enough to keep the works occupied in very profitable business for at least a year. The jury might reasonably believe that such representations, made by persons of standing and character, who lived there, and might be supposed to be familiar with the subject, would have decisive effect in leading a stranger, sojourning there, and having no knowledge of the facts, into the making of such a purchase. These representations, according to the defendant's contention (and there was evidence tending to support it), were relied on by Wilson, and were without any substantial foundation in fact. It was competent to find, further, that the purchase was of trifling value as compared with the price, or its value if it had been as represented. It turned out that the machinery and the bed of clay from which the material for bricks was taken were not on the land, as supposed, but on land of another party. It is argued by counsel for defendant in error that nothing of these representations was embodied in the written contract (which is true), and that they were, therefore, collateral to it. But there is no ground for any argument on this point. If the representations had been embodied in the contract, they might also establish part of the obligations thereof, besides being, if fraudulently made, the ground for an action for deceit, or for an abatement of damages, or recoupment, in a suit brought for the purchase price.

It was not necessary, as contended for defendant in error, that Wilson should have rescinded the contract. If this were a suit by Wilson to recover back the purchase price, a rescission would be necessary. But here the defendant seeks to have the deduction made of the damages resulting from the fraud from the damages which the plaintiff may recover. The authorities support the right to do this. Withers v. Green, 9 How. 213; Van Buren v. Digges, 11 How. 461, 476; Winder v. Caldwell, 14 How. 444; Boggs v. Wann, 58 Fed. 686. Objection is made by counsel for defendant in error upon the ground that the answer does not demand a recoupment. If the recoupment proved were equal to the whole amount of the notes, probably no pleading was necessary. But it is a sufficient answer to the objection that no such ground was

taken at the trial, which proceeded upon its merits. If the objection had been taken, it is quite possible the court would have obviated it by permitting an amendment of the pleadings.

But the main contest made here in support of the ruling of the court below is upon the ground that, as counsel claim, the bank had no notice of the fraud which the plaintiff in error says was perpetrated upon Wilson in obtaining these notes, for the reason, it is argued, that Collins, the president of the bank, was not its agent in the transaction, but was engaged in his own affairs, and, therefore, the bank is not affected by his knowledge. It appears that the bank held about $32,000 in amount of Hill's notes for money theretofore loaned to him while carrying on the manufacture of brick on the premises in question, which he could not pay; that Hill had previously owned the property into which Wilson bought; and that, in effect, the latter's purchase was part of Hill's interest therein, and consequently the purchase price was due to him. If the notes had been executed to him, and had been by his indorsement transferred to the bank in payment of his own notes lying in the bank, and which were surrendered at the time of this transaction, there would be ground for the contention that Collins' participation in the original transaction on his own account would not affect the bank with notice of its character. Thomson-Houston Electric Co. v. Capital Electric Co., 12 C. C. A. 643, 65 Fed. 341; Kennedy v. Green, 3 Mylne & K. 699; In re European Bank, 5 Ch. App. 358; In re Marseilles Extension Railway, 7 Ch. App. 161; Stratton v. Allen, 16 N. J. Eq. 229; Innerarity v. Bank, 139 Mass. 332, 1 N. E. 282; Stevenson v. Bay City, 26 Mich. 44. But that is not this case. There is abundant reason, upon the evidence, for saying that Collins had no substantial private interest in the transaction; that his participation in it as a pretended party in interest was a mere disguise, by which Wilson should be lured into an arrangement whereby the bank should get substantial paper in lieu of Hill's paper, which the bank held and was of little or no value. Collins gave his own notes for a third interest at the same time, but he afterwards declined to recognize them as good for their face, and nothing was ever paid on them, except by the surrender of the balance of Hill's worthless notes. Wilson's notes were made directly to the bank, and there is no question in the case such as arises between the holder by indorsement of commercial paper taken by a bona fide holder for a valuable consideration. In a suit of the payee against the maker of a promissory note, the consideration and the equities of the transaction on which they rest may be inquired into. Daniel, Neg. Inst. § 174. It is not our duty or purpose to express any opinion as to the inferences which ought to be drawn from the facts disclosed by the evidence. It is sufficient to say, upon this branch of the case, that the jury would have been justified in finding that Collins' connection with the transaction, as a pretended associate of Hill, was taken up and continued in the interest and for the purposes of the bank, in the procuration of a good paymaster for a poor debt, and that these notes of Wilson are the fruits of his efforts.

If that be so, the bank holds the proceeds of the transaction charged with the notice of what occurred during the progress which its president had.

Extended argument is made to show that a national bank, such as the plaintiff below represents, is not bound by the acts of its president in its financial affairs; that his duties do not include those matters; and that they belong to other officers of the bank. In an attempt to fasten upon the bank a liability for an act of its president in reference to its financial concerns, it might be very true that the bank could successfully defend upon the ground of the president's lack of authority. Bank v. Atkinson, 55 Fed. 465; Bank v. Armstrong, 13 C. C. A. 47, 65 Fed. 573; Smith v. Lawson, 18 W. Va. 212; Hodge v. Bank, 22 Grat. 51; Olney v. Chadsey, 7 R. I. 224; Morse, Banks, § 143b. But here, by bringing suit upon the notes, the agency by which they were obtained is adopted in an emphatic way, and the act is ratified as effectually as if the agency was expressly created beforehand or expressly ratified afterwards. The doctrine contended for has no application to such a case. In an action to enforce against the principal a contract made by an agent acting without authority, but which has subsequently been ratified by the principal, it is necessary to show that the ratification was made with knowledge of the circumstances. But, when the principal brings the action, and the circumstances are proven in defense, he is not entitled to judgment in disregard of them. In that case he continues to ratify the act of the agent, notwithstanding the facts proven, by pressing his suit for judgment.

Some criticism is made by counsel for defendant in error upon the form of the record, in respect to its sufficiently showing what evidence was produced upon the trial; but we see no difficulty in that respect, and cannot appreciate the obscurity which is said to exist in the record upon this subject. The record proper states the coming on of the cause for trial, the impaneling of the jury, the submission of the evidence, and so on,—showing the dates. The bill of exceptions states, also, the date of the transactions in the case, and gives a detail of the evidence, by whom given, and by what counsel the witnesses were examined, and, at the conclusion of the evidence, it is said, "counsel for plaintiff announced that they had no further testimony to take." "And this being all the testimony heard by the jury on behalf of either party, the plaintiff moved the court to instruct the jury" as hereinbefore stated. This is a clear identification of the evidence which was submitted.

We think the judgment should be reversed, and the cause remanded, with instructions to award a new trial.