## LAWRENCE v. STEARNS.

(Circuit Court, W. D. Michigan, S. D.    April 13, 1897.)

1. RES JUDICATA—EXTENT OF ESTOPPEL.
   The judgment in an action is conclusive, in a subsequent action between the same parties upon the same cause, as to all questions which might have been presented and determined in the first suit; but in a subsequent action between the same parties upon a different cause it is conclusive only upon such questions as were actually litigated and determined in the first suit.

2. SAME—JUDGMENT FOR NEGLIGENCE—SUIT FOR INDEMNITY.
   One who has been prosecuted to judgment upon a cause of action based on the negligent act of another, who has been called in to defend and has defended the suit, may sue such other party for indemnity, and rest his case upon the former adjudication, it being shown that it was in consequence of such negligence that the former judgment passed.

3. SAME—EVIDENCE AS TO QUESTIONS LITIGATED—OPINIONS OF COURT.
   Under the provision of the constitution of Michigan (article 6, § 10) that the decisions of the supreme court shall be in writing, signed by the judges, and filed in the clerk's office, the opinion of the supreme court of that state is competent, and the best evidence of the grounds of the adjudication in any case upon the questions litigated and determined therein.

4. LACHES—KNOWLEDGE OF GROUND OF ACTION.
   In a suit by the receiver of a bank to charge its president with losses arising from his negligent management, where it is fairly inferable from the evidence that the facts constituting such negligence were not disclosed by the president to the directors until long after their occurrence, and until disclosed by the bringing of a suit by a third party, and the judgment therein, the lapse of more than the statutory period of limitation since the actual occurrence of the negligence cannot be imputed to the receiver as laches.

5. BANKS AND BANKING—MISMANAGEMENT BY PRESIDENT—EXCESSIVE LOANS TO RELATIVE.
   Where the president of a bank, having the management of its business, has loaned to a near relative a large share of the capital of the bank, and, with knowledge that securities offered to the bank by such relative are subject to conditions likely to eat away much of their value, has accepted the securities at their face value, crediting his relative therewith, and surrendering obligations, good at the time, he is liable to the bank, because of such negligent management, for a loss resulting from the depreciation of the securities so accepted.

Fletcher & Wanty, for complainant.
Crane, Norris & Stevens, for defendant.

SEVERENS, District Judge.    The bill of complaint in this case was filed for the purpose of recovering from the defendant the damages resulting from an alleged breach of trust on his part while acting as president and managing officer of the Northern National Bank of Big Rapids.    This bank was chartered on the 19th day of September, 1870, for the period of 20 years, and its charter was extended by the comptroller of the currency on the 5th day of September, 1890, until the 19th day of September, 1910.    The capital stock of the bank at the time of its organization was fixed at the sum of $150,000, but on the 10th day of January, 1893, its capital was reduced by the direction of the comptroller of the currency, to $100,000.    The bank failed and closed its doors shortly before the 5th day of August,

1893, and on that day the complainant, Lawrence, was appointed receiver by the comptroller of the currency, and entered upon his duties as such a few days after, and has since continued in the possession of the assets of the bank for the purpose of collecting its assets and liquidating its financial affairs. It is alleged in the bill that the defendant, Stearns, was president of the bank from its organization to the 3d day of August, 1891, and that La Fora S. Baker, who was a nephew of said Stearns, was cashier of the bank from its organization to about the 11th day of January, 1887; and that after Baker ceased to be cashier substantially the whole control and management of the bank passed into the hands of the president, who afterwards exercised the powers which the two had previously exercised. It is alleged that on the 22d day of January, 1888, the bank held paper to the amount of $15,000, made by Baker, and indorsed by the Baker Lumber Company, and paper amounting to $15,000, made by the Baker Lumber Company, and indorsed by Baker; that the Baker Lumber Company was a corporation organized in bad faith for the purpose of carrying on the business of Baker, and to be used as a cover under which he could obtain loans from the bank in excess of the amount permitted by law; that Baker owned all the stock except one or two shares, and that the organization of said corporation was merely colorable; that Stearns knew all of these facts, and loaned to Baker the sum of $30,000, being the aggregate of the two amounts above mentioned. It is further alleged that on the 22d day of March, 1886, Baker sold to Anderson & Griffin certain pine lands for the sum of $50,000, $5,000 of which was paid down, and a note of Anderson & Griffin for the remaining $45,000, payable on or before two years from date, with interest at 7 per cent., was taken for the balance. The note was secured by a mortgage upon the property sold, and Baker at the same time gave to Anderson & Griffin a written guaranty that these lands, together with some other logs therein mentioned, would produce 13,000,000 feet of pine lumber, and that he would refund the sum of $3.50 per M. for the number of feet it fell short of that amount; and it is charged that the defendant, Stearns, had full knowledge of all the particulars of this transaction. It is further stated that on the 9th day of February, 1887, Baker assigned the above-mentioned note and mortgage to Palmer & Brown as security for a loan of $20,000 which they had made to him upon his note indorsed by Stearns, and that Anderson & Griffin made payments upon this note and mortgage to Palmer & Brown to such an extent that on the 22d day of January, 1888, there remained due to Palmer & Brown $4,508.56, leaving still due and unpaid on the Anderson & Griffin note and mortgage the sum of $23,089.12; that on the 3d day of August, 1887, Stearns, acting for the bank, and by concert with Baker, bought the Anderson & Griffin note and mortgage from Palmer & Brown, but the bargain was not closed up until the 22d day of January, 1888, on which day Stearns, acting for the bank, paid to Palmer & Brown the sum of $4,508.56, being the amount still due to them on the note of Baker indorsed by Stearns, took an assignment of the note and mortgage to himself, and forthwith transferred the note and mortgage of Griffin & Anderson to the

bank in payment of a note of the Baker Lumber Company, indorsed by Baker, of $7,500, and two notes of $5,000 each, made by Baker and indorsed by the Baker Lumber Company (all of which were parts of the indebtedness of those persons to the bank, above mentioned), canceled and delivered up the notes, and gave the Baker Lumber Company a credit upon the books of the bank for the sum of $1,080.56, being the balance of the whole sum purporting to be due upon the Anderson & Griffin note and mortgage, which credit of $1,080.56 the Baker Lumber Company afterwards checked out. It is alleged that the defendant, Stearns, in this purchase of the Anderson & Griffin note and mortgage, acted without the knowledge of the directors or other officers of the bank, and that he conducted the same personally. It is charged that the defendant, in making this purchase of the Anderson & Griffin note and mortgage, and parting with the assets of the bank therefor, knew of the guaranty agreement made by Baker to Griffin & Anderson that the lands should produce 13,000,000 feet of pine, and the contract for indemnity against their producing a smaller amount. It is further alleged that soon after this purchase for the bank, it having turned out that the quantity of pine on the lands which Baker had sold to Anderson & Griffin was very much less than the sum stipulated in Baker's guaranty, and that the deficiency was nearly half of the stipulated 13,000,000 feet, Griffin & Anderson filed their bill of complaint in the circuit court for Newaygo county in chancery against the bank, Stearns, and Baker for the purpose of having the amount of the deficiency in the quantity of lumber charged up against the sum due on the note and mortgage to Baker, which the bank now held; it being alleged that the bank had notice of Griffin & Anderson's rights when it took their note and mortgage. Personal service upon the defendants in that suit was obtained. Baker made no defense, but Stearns, who was charged in the bill with having had full knowledge of the Baker guaranty when he carried through the transactions above mentioned in purchasing the note and mortgage for the bank, assumed and conducted the defense for the bank, and filed an answer in its behalf, and he also filed an answer for himself. In both these answers it was denied that either the bank or Stearns had any knowledge of the existence of the Baker guaranty at the time of the purchase of the note and mortgage from Palmer & Brown and the taking of the same by the bank. Replications being filed to those answers, proofs were taken, and the parties went to hearing. The court found that Stearns did in fact have knowledge of the guaranty, and decreed in favor of the complainants. The bank and the defendant, Stearns, appealed to the supreme court, where, upon a hearing, the supreme court reached the same conclusion upon the facts, and decreed that upon the payment by Griffin & Anderson of the sum which the bank had paid to Palmer & Brown,—who, as the court held (57 N. W. 808), were bona fide holders of Griffin & Anderson's note, to whose position, to the extent of the amount paid by the bank, the latter succeeded,—Griffin & Anderson were entitled to have the note canceled, and the mortgage discharged; it being found that there was a deficiency of 5,500,000 feet in the quantity of the lumber as guaranteed by Baker, for which Griffin & Anderson were entitled

to a credit of $19,250. This was a sum larger than the amount due upon the note and mortgage at the time of the bank's purchase, after deducting the amount paid to Palmer & Brown. Thus the whole sum of the notes of Baker and of the Baker Lumber Company, which were canceled and surrendered, and also the amount credited to the Baker Lumber Company, and which was afterwards checked out as above mentioned, was lost to the bank. In the present case the defendant, Stearns, answers, substantially admitting all of the material parts of the bill, except that he denies that at the time he took the Griffin & Anderson note and mortgage for the bank, and discharged the obligations of Baker and the Baker Lumber Company, and gave the latter the credit, he had any knowledge of Baker's guaranty. He pleads also certain facts in exoneration of some of the material facts admitted, but there was a replication to his answer, and there is no proof of such alleged circumstances. He also pleads the statute of limitations in bar of the suit. But the question of fact as to whether Stearns had notice of the existence of the Baker guaranty which destroyed the value of the Griffin & Anderson securities is the vital one in the case. To prove that he had such knowledge, the complainant has put in evidence the record of the suit in the state court, above mentioned, and insists that that record shows that it was there adjudicated that he did have such notice, and that it was in consequence of that that the bank was held chargeable and suffered the loss. It is insisted by the complainant that that adjudication establishes the fact for the purposes of the present case. The defendant, on the other hand, denies that that record can have any such effect here, and in support of this contention it is urged: (1) That the record does not show that the point or question here involved was actually litigated and determined by the decree, and that the latter is not sufficient as an estoppel as to such matters as merely might have been there litigated and determined. (2) That the rule that where one is held in damages for the negligent act of another, he may, upon an adjudication charging him, sue the party whose negligence produced the result, and obtain indemnity, does not apply; at least, that there is no estoppel against the defendant in the second suit in respect of the facts adjudicated in the first. (3) That the opinion of the supreme court wherein the conclusions of fact were stated is no proof that the decree of that court proceeded upon the grounds therein stated.

1. It will be assumed for the purpose of discussing the first two of the above propositions that the opinion of the supreme court of the state in the former suit is competent evidence of the matters there decided, and which formed the basis of the decree (a subject of discussion which will be taken up later on), for it is clear that, if that opinion is not competent evidence upon the question as to what matters were decided in that case, there is nothing in the proofs in the present case upon which it can be held that the defendant's knowledge of the character of the Anderson & Griffin note and mortgage was found and determined in the former suit. But it is also clear that the pleadings in that case were such that such knowledge on the part of Stearns might be a material, indeed

a vital, fact to be determined in order to reach the proper conclusion. It must be admitted that upon the face of that record—not, of course, now including the opinion of the supreme court—it does not necessarily follow that the decree passed upon the fact as being found that Stearns had knowledge of the quality of the note and mortgage, for the decree might have passed upon a finding that the bank had knowledge or was charged with notice in some other way. But it might be that the foundation of the court's decree consisted of a finding that the bank was chargeable with notice of the equities of Anderson & Griffin by reason of the fact, if that were found, that Stearns himself, who was its president and managing officer, and conducted that very business, had such notice. Inasmuch as the president did in fact conduct the transaction on the part of the bank, and the bank was asserting and endeavoring to protect its right and title to the note and mortgage, it was chargeable by implication with such knowledge as he had. Wilson's Ex'x v. Pauly, 37 U. S. App. 642, 18 C. C. A. 475, and 72 Fed. 129. Numerous authorities are cited to establish the distinction, and the result of that distinction in determining the application of the doctrine of estoppel, between those cases where the second suit is upon the same cause of action and between the same parties as the first, and those cases where the second suit is upon a different cause of action though between the same parties; the rule being that the judgment in the former cases is conclusive as to every question which might have been presented and determined in the first suit, whereas in the latter cases the judgment operates as an estoppel only upon the point or questions actually litigated and determined, and not as to other matters which might have been, but were not, litigated and determined. Cromwell v. County of Sac, 94 U. S. 351; Dooley v. Potter, 140 Mass. 49, 2 N. E. 935; Railroad Co. v. Alsbrook, 146 U. S. 279, 13 Sup. Ct. 72; Johnson Steel St. R. Co. v. Wm. Wharton, Jr., & Co., 152 U. S. 252, 14 Sup. Ct. 608; Last Chance Min. Co. v. Tyler Min. Co., 157 U. S. 683, 15 Sup. Ct. 733; De Sollar v. Hanscome, 158 U. S. 216, 15 Sup. Ct. 816; Ryder v. Loomis, 161 Mass. 161, 36 N. E. 836; Schwan v. Kelly, 173 Pa. St. 65, 33 Atl. 1107. This distinction relating to the manner in which the question arose and was determined in the former suit is undoubtedly well established, and, the present case being one falling within the second class, it follows that it must be made to appear—First, that the question here involved might have been one of inquiry and determination in that case; and, second, that it actually did become a matter of inquiry and determination. Russell v. Place, 94 U. S. 606; Steam Packet Co. v. Sickles, 24 How. 333; Wilson's Ex'r v. Deen, 121 U. S. 525, 7 Sup. Ct. 1004. As a matter of fact, it appears from the record of the former suit, as already stated, that the matter in question here might have been litigated in the former suit; and upon the question of fact it is manifest that it was in fact litigated. It became the central point of the controversy, and the case turned upon its decision. Stearns, in his answer for the bank, denied that it had notice of the guaranty, and the opinion of the supreme court shows that it was upon the notice imputed to the

bank from the knowledge of Stearns that the bank was charged. No other ground was suggested.

2. The question next to be considered is whether one who has been prosecuted to judgment upon a cause of action based upon the negligent act of another who owed a duty to him, and where such other party has been called in to defend, and has actually assumed the conduct of the defense, may sue such other party for indemnity, and rest his case in respect of the question of negligence upon proof of the former adjudication, it being shown that it was in consequence of such negligence that the former judgment passed. I think this question must be answered in the affirmative. The principle involved is one which lies at the foundation of many cases, and has become defined and settled as a distinct branch of the law of estoppel. Robbins v. Chicago, 4 Wall. 657; Washington Gaslight Co. v. District of Columbia, 161 U. S. 316, 16 Sup. Ct. 564; Oceanic Steam Nav. Co. v. Campania Transatlantica Espanola, 144 N. Y. 663, 39 N. E. 360; Lloyd v. Barr, 11 Pa. St. 41; Westfield Gas & Milling Co. v. Noblesville & E. Gravel Road Co., 13 Ind. App. 481, 41 N. E. 955. The case of City of Boston v. Worthington, 10 Gray, 496, cited by counsel for the defendant as one which clearly states the law upon this subject, is in harmony with the doctrine stated. It asserts that the former judgment against the plaintiffs was conclusive against the defendants in the second suit upon all of the points for which the record of the former suit is offered here. The points upon which it is said the former judgment would not be conclusive are such as in the present case are established by the pleadings and the relations of the parties.

3. It being established that the pleadings in the former suit of Griffin & Anderson against the bank, Stearns, and Baker constituted grounds upon which the question of Stearns' negligence might be litigated, and might become the pivotal question in the case, the next question is whether the proof upon that subject which has been offered is competent to show that in fact it was a material and decisive question in the case, and was decided. It is insisted by counsel for the defendant that the opinion of the court is not competent evidence to prove such fact, and the defense in the present case has been rested largely upon this contention. As already stated, if the defendant's position is right upon this question, the case fails, and it appears to me to be equally certain, if the propositions already affirmed in this opinion are sound, the disposition of this question the other way practically decides the case against the defendant. It is insisted that the opinion of the court is nothing but hearsay; that it is no part of the judgment, nor, indeed, any part of the record. And it is insisted that if the question as to the grounds of the decree may be gone into by proof outside of the decree itself, that witnesses should be called, and the matter proved in the ordinary way. This does not appear to me to be a reasonable contention. In fact, I think there can be no higher or better evidence than the written opinion of the court itself upon which the decree is framed. The constitution of the state, by section 10 of article 6, declares that:

"The decisions of the supreme court shall be in writing, signed by the judges concurring therein. Any judge dissenting therefrom shall give the reasons of such dissent in writing, under his signature. All such opinions shall be filed in the office of the clerk of the supreme court."

Thus an official character is given to the opinions of the court, and, when filed as the constitution requires, they become authentic evidence of their contents. How is the matter to be proved? Shall the judges be called to testify upon what reasons moving their minds the decision was made? It seems very doubtful whether such proof would be admissible at all. The evidence of what they did is in writing, officially signed and filed by them, and the reasons for their decision are required to have been stated in such writing, and I am well satisfied that the writing itself is the best, if not the only, authentic evidence which could be received. I must, therefore, hold that the objection against its admissibility must be overruled. Phelps v. Harris, 101 U. S. 370; Legrand v. Rixey's Adm'r, 83 Va. 862, 3 S. E. 864; Last Chance Min. Co. v. Tyler Min. Co., 157 U. S. 683, 15 Sup. Ct. 733; New Orleans, M. & C. R. Co. v. City of New Orleans, 14 Fed. 373; Southern Minn. Ry. Extension Co. v. St. Paul & S. C. R. Co., 5 C. C. A. 249, 55 Fed. 690; Esterbrook v. Savage, 21 Hun, 145; Insurance Co. v. Herbert (Sup.) 33 N. Y. Supp. 819. The case of Insurance Co. v. Hamilton, 22 U. S. App. 386, 11 C. C. A. 42, and 63 Fed. 93, is not in conflict with this view. The question there involved was the sufficiency of the opinion in the court below as a finding of facts upon which to review the judgment. It was not a finding of the ultimate facts upon which the judgment rested. And, further, there was no law which required the opinion of the court below to be in writing and filed with the clerk, as was the case here.

4. The statute of limitations is pleaded in the answer in this case, but it would appear that the facts upon which the defendant's liability rested were not known until a long time after the transaction occurred. They rested in the knowledge of the defendant, Stearns. He was the manager of the bank, and conducted the transaction in question. There is no reason to suppose that he disclosed the facts within his knowledge to the board of directors. On the contrary, the inferences from the record are strong that he did not make any such disclosure. In the state court he had stoutly denied having had any knowledge whatever of Baker's guaranty, and it is reasonable to suppose and presume as against him that he did not disclose as a fact to the directors that he had any such knowledge. So far as is shown, and I think it right to conclude, the first notice of the existence of such knowledge was when the bill was filed in the state court, and then it was disputed by him, and continued an open question until the supreme court of the state decided that the fact was so. I think this is a case for the application of the doctrine that laches cannot be imputed where the cause of action was concealed by the defendant.

5. Upon the facts it appears to me that the complainant's case is made out. The defendant had charge of the business of the bank. He had suffered Baker, who was a near relative, and the Baker Lumber Company, to appropriate of the funds of the bank a sum constituting a large share of the capital of the bank. This is not the gravamen

of the charge, but it casts some light upon his subsequent proceedings. With knowledge that the securities he was taking were affected by the guaranty of Baker which might eat away their value, he took these securities, and gave Baker credit for the whole amount which those securities represented, assuming them to be perfectly good for their face. He canceled and surrendered the notes of Baker and the Baker Lumber Company, and gave the latter a credit for the balance, which he allowed the company to check out from the bank. It is shown that Baker at that time was responsible, and the presumption is that the Baker Lumber Company was also responsible. Certainly it is a fair presumption as against the defendant, who had loaned the funds of the bank to that company to the full limit allowed by law. It is said that some time afterwards, when the suit in the state court was begun, Baker had himself become insolvent, but this in no wise contravenes the proof that at the time when the Griffin & Anderson note and mortgage were taken and Baker's obligation discharged he was solvent. In my opinion, no man of such judgment as a bank president and managing officer should possess would without gross negligence have dealt with these affairs in such a way if they had been his own. Besides what affirmatively appears, I am satisfied that there was something behind the scenes in the relations of the defendant and Baker which must have been influential in the transaction. It appears that Baker wrote a letter at about the time in respect of the transactions which might throw light upon the subject, but the defendant fails to produce that letter, and fails to make any statement whatever in regard to the attendant facts except by mere averment in pleading. It is said that the letter was destroyed. The reason given in the answer for this is that it contained matter relating to Baker's domestic affairs, but there is no proof of this, and the case is open to the presumption which applies to one who has put evidence out of the way. The reason for the destruction of the letter stated in the answer would not be altogether unreasonable if it were supported by proof, but it is not thus supported. The defendant has been content to rest his whole defense in respect of the facts substantially upon the ground that the evidence offered by complainant to establish his fault was not competent for that purpose. If it were shown that he consulted the board of directors, and laid the facts of which he was cognizant before them, and they had approved the transaction, although it would have seemed like reckless business, it would stand in a somewhat different light. It is charged in one of the paragraphs of the bill, among other things, that he acted without the knowledge of the board of directors, and that he personally conducted the transaction. The answer admits that he personally conducted the transaction, but denies all the other allegations in that paragraph. If they knew and approved the transaction, it would be a fact tending to exoneration, and it is reasonable to suppose that if it was a fact he would have pleaded and proved it. I cannot say with certainty that there was any actual bad faith on the part of Mr. Stearns other than such as is involved in gross negligence in the management of this affair for the bank. In my judgment, it is necessary to say that, having regard

to the interests of stockholders and depositors who confided in his intelligence, business capacity, and good faith, such a transaction ought not to be excused, and that the security of people dealing with such institutions ought not to be permitted to be destroyed by such recklessness in the management of the affairs of the bank as the present case discloses.

My opinion is that the complainant is entitled to a decree for the amount claimed.