BAGLEY v. GENERAL FIRE EXTINGUISHER CO.

(Circuit Court of Appeals, Second Circuit. December 4, 1906.)

No. 63.

1. SALES—IMPLIED WARRANTY.

Where an article is ordered from a manufacturer for a particular purpose, there is ordinarily an implied warranty that it will be fit for that purpose.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 772, 773.]

2. SAME—SPECIAL CONTRACT.

A contract for the installation of a sprinkler system provided that all the materials should be first-class, that all work should be done in a thorough and workmanlike manner, and in conformity with the improved risks commission standard for automatic sprinkler installation, and that no obligations other than set forth in the contract, and made a part of the proposal and acceptance, should be binding on either party. *Held* that, under such contract, the manufacturer was not bound by an implied warranty that the sprinkler system was suitable to the building in which it was installed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 759, 760.]

3. JUDGMENTS—RES JUDICATA.

Plaintiff's assignor contracted with defendant for the installation of a sprinkler system in a building, defendant agreeing to install a specified system in a thorough and workmanlike manner, and that all the materials should be first-class, but that no other obligations not specified in the contract should be binding on either party. After the system was installed and accepted, certain of the sprinkler heads, which were located under skylights, were caused to fuse by the direct rays of the sun, and the building was flooded, causing injury to the tenants, who brought suit against plaintiff's assignor therefor. Defendant was notified to defend, but failed to do so. *Held*, that the construction of the installation contract was not an issue in such suits, and judgments recovered against plaintiff's assignor therein were not res judicata in a subsequent action against defendant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, §§ 1223, 1224.]

4. SALES—INSTALLATION OF SPRINKLER SYSTEM—DEFECTS—EVIDENCE.

Where, in an action for damages caused by alleged defects in a sprinkler system installed in the building of plaintiff's assignor by defendant, plaintiff claimed that defendant had failed to exercise reasonable care to protect the sprinkler heads, located under skylights, from fusing from exposure to sunshine alone, but there was also evidence that the skylights were equipped with ventilators for use in fair weather, which were closed at the time the sprinkler heads under the skylights fused, which they would probably not have done had the ventilators been open, the fact that the heads fused did not necessarily prove that the installation work was not done in a workmanlike manner.

In Error to the Circuit Court of the United States for the Southern District of New York.

H. B. Classon, for plaintiff in error.

Peter B. Olney, for defendant in error.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

TOWNSEND, Circuit Judge. The plaintiff's assignors, hereinafter called the plaintiff, under the name of the estate of John J. Bagley, were the owners of certain land and a building thereon in the city of Detroit, in the state of Michigan. The defendant was a New York corporation, engaged in the business of manufacturing and installing automatic sprinklers. In May, 1896, the parties entered into a contract, which was as follows:

"General Fire Extinguisher Company.

"Chicago, Ill., April 20, 1896.

"Proposal for equipping the property of estate of J. J. Bagley building, 19 to 33 Larned St., Detroit, Mich., with an improved system of fire extinguisher apparatus. The work under this proposal consists in furnishing and erecting a system of wet pipe Grinnell automatic sprinklers, including the necessary piping, &c. ° * * * Also such other materials and labor as are described and enumerated in the within specifications. All the materials to be first-class, and all work herein specified to be done in a thorough and workmanlike manner, and in conformity with the improved risks commission standard for automatic sprinkler installation. It is agreed that space for materials and facilities for the prosecution of the work should be accorded on the premises. * * * It is explicitly understood and agreed that no obligations other than herein set forth and made a part of this proposal and acceptance shall be binding upon either party. * * * Our price for the work herein specified will be $4,800 (forty-eight hundred dollars). * * *

"General Fire Extinguisher Company,

"By B. W. Dawley, Dept. Agt.

"We hereby accept the above proposal, and agree to pay the General Fire Extinguisher Company as follows: &c. * * *

"[Signed]                          Estate of John J. Bagley."

(Here followed specifications.)

The defendant equipped said building with such a system, and the referee has found that the materials furnished were first-class, and that the work was done in a thorough and workmanlike manner, and in conformity with said risks commission's standard. The plan, showing sprinkler heads located in the skylights of said building, and designating ordinary heads intended to fuse at 155 degrees Fahrenheit, was shown to said commission and approved by it, and the system when installed was inspected and approved by said commission, and in consequence thereof the insurance rate was materially reduced. The sprinkler heads intended to fuse at 155 degrees were proper ones, and if sprinkler heads intended to fuse at 286 degrees had been placed in said skylights they would not have been approved by said commission.

The referee further found as follows:

"Fifteenth. That thereafter, and on the fourth day of July, 1897, without the existence of any fire in the said buildings, the sprinkler heads, or certain of them, in the said skylights fused, melted, opened, and released the water

in certain of the pipes and tanks connected with said sprinkler heads, and furnished and erected by the defendant as a part of said system of automatic sprinklers.

"Sixteenth. That the reason the said sprinkler heads so fused, as aforesaid, was not because there were any defects in the materials used, or in the installation aforesaid, or because the said sprinkler heads fused at a lesser degree of heat than that at which they were intended to fuse, and at which they were marked to fuse, but because of the extraordinary degree of heat in the skylights at the time of said fusing.

"Seventeenth. That at the time of said fusing the temperature in the said skylights, at the time of the fusing point of said sprinkler heads, reached at least 155 degrees Fahrenheit; that the sprinkler heads which so fused were up to the standards for the sprinkler heads which were marked 155 degrees Fahrenheit, and that the said sprinkler heads did not fuse, as aforesaid, at less than 155 degrees Fahrenheit, the temperature at which they were intended and marked to fuse.

"Eighteenth. That the extraordinary temperature in the said skylights at the time of said fusing was caused by the sun's rays shining through the skylights into the space wherein the said sprinkler heads were located, and by lack of draughts of air in said skylights, and by reason of other and extraordinary physical conditions in and about said skylights, and none of said conditions were caused by the defendant, and all of which were without the fault of the defendant.

"Nineteenth. That because of the fusing of the sprinkler heads aforesaid and the opening of the same, and the release of the water thereby, considerable water flowed through the said building, and damaged certain stocks of goods and machinery which were therein."

The building at this time was in the possession of certain tenants, and actions were brought by said tenants and their assignees in the courts of the state of Michigan against this plaintiff to recover damages caused by said flow of water. The plaintiff duly notified this defendant of the commencement of said actions, and requested it to defend the same, but defendant did not defend, and judgments were rendered against this plaintiff in said actions, and the referee found that these judgments did not adjudicate the agreement in question herein, or the acts of defendant under said agreement, or the liability of this defendant to this plaintiff.

Upon these facts the referee concluded that, as a matter of law, the defendant was not liable for said damages; that the Michigan judgments were not res adjudicata as to the negligence of this defendant in the performance of its contract, and therefore were not binding upon it in this action, and that this defendant discharged its whole obligation, which it had assumed in its contract, and owed no further duty to the plaintiff and his assignors or the tenants in the building.

It is admitted by counsel for plaintiff that there is no conflict in the evidence upon any material question of fact. The assignments of error challenge the correctness of the conclusion of the referee: First, that this defendant was not concluded by any fact adjudged in the Michigan suits; second, that the language of the contract, "that no obligations other than herein set forth * * * shall be binding upon either party," prohibited any liability of the defendant upon any implied covenant or warranty; and, third, that the defendant discharged its whole obligation which it had assumed under the contract, and owed no further duty to the plaintiff or the tenants in the building, because it had installed and delivered under its contract a specifically designated apparatus.

The view which we have taken of the case dispenses us from the necessity of discussing the correctness of this third contention. Nor is it necessary to discuss the well-settled doctrine, repeatedly discussed and affirmed in this court, that where an article is ordered from a manufacturer for a particular purpose, there is an implied warranty that it shall be fit for that purpose  Cleveland Linseed Oil Co. v. A. P. Buchanan & Sons, 120 Fed. 906, 57 C. C. A. 498, and cases cited.  In the case at bar, even if we are bound by the finding of the referee that the work was done in a workmanlike manner and that the materials were first-class (a question to be hereafter discussed) and although it is admitted that said work was done in conformity with the risks commission standard, we are not satisfied that the system was so installed as to be suitable for the purpose for which it was ordered, namely, with heads which would fuse and permit the water to flow in case of fire, and would retain the water on all other occasions; and we do not wish to be understood as holding that if this were merely the ordinary contract of a manufacturer to furnish work and materials for a particular purpose, the doctrine of an implied warranty of fitness would not be applicable.  It does not appear that the owners of the building had any knowledge whatever as to the construction or installation of such a system.  The work was in charge and under the control of the manufacturers, to be prosecuted according to their judgment, subject only to the approval of the risks commission; and it is urged with great force that they might have installed a safe apparatus, suitable for the purpose for which it was ordered, either by providing heads which would fuse at a higher temperature, or by protecting the heads furnished from the rays of the sun in the skylight, or by the adoption of other appropriate measures for guarding against such a disaster.  But we are dealing here with a contract which explicitly provides, in terms, "that no obligations other than herein set forth and made a part of this proposal and acceptance shall be binding upon either party," and we are therefore constrained to agree with the referee that some substantial effect must be given to this provision, and that such effect operates to relieve defendant from liability.  The natural and reasonable construction of the clause of the contract referred to above is that no warranties should be attached to the contract except those that were "set forth" in terms, and that, therefore, there was no implied warranty or stipulation of fitness on the part of the manufacturer.

We are brought, then, to a consideration of the effect of the Michigan judgment.  Here, again, in our opinion, the language of the provision quoted above prevents us from giving to the Michigan judgment the effect which it might otherwise have had.  The Michigan judgment was res adjudicata between the parties thereto that the owners of the building were bound to exercise ordinary care to furnish their tenants with an apparatus which was suitable and adapted for use in said building, and that such care had not been exercised.  We are not called upon to consider under what circumstances this adjudication would have been controlling as to the duty resting upon this defendant towards the owners of the building.  It is clear that said judgments were not res adjudicata in the case at bar, because, upon the construction

which we are forced to give to the limiting clause quoted above, the defendant did not agree to use ordinary care to furnish a suitable system, but agreed only to furnish a certain system, and "all the materials to be first-class, and all work herein specified to be done in a thorough and workmanlike manner, and in conformity with the improved risks commission standard, for automatic sprinkler installation." No such agreement was in issue in the Michigan court, and therefore the judgment of said court is not res adjudicata in this action.

Certain findings of fact by the referee are challenged, on the ground that the evidence is insufficient to sustain them. The exceptions to said findings, not disposed of by the considerations already suggested, may be summarized under the claim that the evidence fails to show that the work specified was done in a thorough and workmanlike manner. In support of this contention it is claimed that it was not workmanlike to put 155 degree heads in the skylight without ascertaining the temperature to which they might become heated by exposure to the rays of sunshine alone, and without taking reasonable care to protect the heads against fusing thereunder. But the evidence showed that in the skylight in the end of the building at Nos. 19 to 21 Larned street, where one of the heads fused, there were wooden doors for ventilation, operated by swinging sashes, which were ordinarily closed in case of threatened storm and at night, and which were in fact closed at the time of the disaster. The evidence further showed that at the other end of the building at Nos. 31 to 33 Larned street, where the other head fused, windows were inserted for ventilators. There is testimony to the effect that in the skylight between said two skylights there were no windows, but, in view of the evidence as to the windows located in said two skylights, this would seem to be immaterial. It is further admitted that at the time of the accident the windows in the skylight where there were any windows were closed.

In these circumstances we think the referee would have been justified in holding that when the defendant installed the apparatus it had a right to assume that these ventilating windows would be made available for the use for which they were intended at the time when such use was necessary or proper, and in view of the uncontradicted evidence that the installation was in accord with the usual practice in such buildings, and of the finding as to lack of draughts of air, we cannot say, merely because the heads fused on a hot day, when all of said windows were closed, that the work was not done in a workmanlike manner. Furthermore, it appears that, as a part of the apparatus when it was installed, a gong was provided, the purpose of which was to ring the alarm in case of an accident to the sprinkler system, and that the gong sounded at the time of the accident, and that if a watchman had been on the premises at the time when the gong sounded the flow of water could have been turned off without serious damage.

While it is argued that good workmanship requires some further measures of protection against the rays of the sun there is no evidence as to the use of any such protectors in said system, and while it is argued that defendant should have used sprinkler heads intended to fuse only at a higher temperature, it appears that if the 286 degree sprinkler heads had been used the inspector of the risks commission would have

ordered them out, and that within the last few years defendant had made no sprinkler heads to fuse at any point between 155 and 286 degrees.

In these circumstances, inasmuch as it does not appear that the accident would have occurred if the ventilating windows had been open, or that the damage would have resulted if there had been a watchman on the premises, and as it appears that if heads intended to fuse at a higher temperature had been furnished they would not have been approved by the commission, we think there is sufficient evidence to support the finding of the referee as above.

This case is one of great hardship. The disaster occurred through conditions and under circumstances not actually or naturally within the contemplation of the parties to the contract. Nevertheless, the defendant agreed to install a system which was intended, not only to discharge water in case of fire, but to retain the water under all other circumstances, and the plaintiff, confiding in the reputation and experience of the defendant, entrusted to it the plan and execution of the work. It is therefore peculiarly a case in which a warranty of fitness would ordinarily be implied.

But we must not overlook the fact that a warranty is not "one of the essential elements of the contract, * * * but it it a collateral undertaking, forming part of the contract by the agreement of the parties, express or implied." Benjamin on Sales, § 610. Here, by agreement of the parties, certain obligations were expressly set forth and warranted; all other obligations not "herein set forth" were excluded.

The judgment is affirmed.