BURLEY et al. v. COMPAGNIE DE NAVIGATION FRANCAISE.

(Circuit Court of Appeals, Ninth Circuit.   February 5, 1912.)

No. 2,027.

1. INDEMNITY (§ 14*)—JUDGMENT AGAINST INDEMNITEE—CONCLUSIVENESS AGAINST INDEMNITOR.

Where a person is responsible over to another by operation of law or by express contract, and he is fully informed of the claim and that the action is pending and has full opportunity to defend, the judgment, if obtained without fraud or collusion, will be conclusive against him whether he appeared or not; but it does not preclude him from setting up any defense, when sued for indemnity, which he could not have interposed in the former suit.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. § 41; Dec. Dig. § 14.*]

2. TOWAGE (§ 19*)—ANCHORAGE OF TOW IN ILLEGAL PLACE—COLLISION—LIABILITY OF TUG FOR INDEMNITY.

A tug in charge of a harbor pilot employed to tow a French barque which had loaded at Tacoma to an anchorage, there being a dense fog, anchored her in the channel where it was prohibited by ordinance without special permission from the harbor master, which was not obtained.   When she had lain there for 24 hours, during which time the fog lifted but again settled down, another vessel leaving the port came into collision with her and was injured.   The barque was held in fault for being anchored in an improper place and held liable in half damages, which she paid.   *Held*, that the owners of the tug were liable over to her, it being the tug's duty, even if justified by reason of the fog in anchoring her where it did, to remove her when the weather cleared.

[Ed. Note.—For other cases, see Towage, Cent. Dig. § 41; Dec. Dig. § 19.*]

Appeal from the District Court of the United States for the Western Division of the Western District of Washington.

Suit in admiralty by the Compagnie de Navigation Francaise as owner of the French barque Amiral Cecille against Thomas S. Burley and Robert McCullough doing business as the Tacoma Tug & Barge Company.   Decree for libelant (183 Fed. 166) and respondents appeal.   Affirmed.

On November 9, 1904, the French barque Amiral Cecille, owned by the appellee herein, having taken on a cargo at Tacoma, Wash., employed the appellants to tow her to an anchorage in the harbor where she might lie until ready to clear from the port and be taken to sea by an ocean-going tug. About 3 o'clock of that day, the appellant Burley, who was a licensed pilot and manager of the appellant company, and who had handled 99 per cent. of all the ships which had come into the harbor of Tacoma for the preceding 11 years, and was familiar with the anchorage ground and moorings in the harbor, came with a tug to take the barque to anchorage.   The captain of the barque made no designation of a place of anchorage.   The appellant Burley was familiar with the ordinance of the city of Tacoma, which provided that ships should not be anchored in the harbor inside of a line drawn from the St. Paul & Tacoma Lumber Company's wharf to the Tacoma Warehouse & Elevator Company's elevator, except upon the written permission of the harbor master.   He admitted, however, that he had often violated the ordinance, with the apparent tacit consent of the harbor master.   The officers of the Cecille knew nothing of the ordinance.   The appellant's tug made fast to the Cecille, swung her around, and towed her down the channel.   The

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

weather had been very foggy, but when the tug went to the Cecille and commenced towing her, the fog had lifted. Before the anchorage was made, however, a thick fog shut down again. The tug continued with her tow, guided by the sound of a pile driver near by, until they had gone, as was supposed, approximately 200 feet beyond the pile driver, when the appellant Burley directed that the anchor of the Cecille be let go, and, according to his testimony, he directed that her officers pay out not exceeding four shackles of chain, the French measurement being in shackles of 15 fathoms each. The ship was anchored at about 4 o'clock p. m. As soon as the anchor was dropped, Burley left the barque, went on board the tug, returned to Tacoma, and went that evening to Port Townsend or Victoria to pilot an incoming vessel. From 4 o'clock of that day the fog continued very thick until about noon the following day, when for an hour or two it lifted, but about 2:30 p. m. of the 10th the fog closed down and remained dense until 8 o'clock on the following morning. At about 7:45 p. m. on the 10th, the stern wheel steamer Multnomah, running between Olympia and Seattle, by way of Tacoma, having left the dock at Tacoma bound for Seattle, pursuing what she believed to be her course, collided with the Cecille. The collision resulted in litigation, the result whereof was that both the Cecille and the Multnomah were held at fault, and as the Multnomah alone was damaged, the owners of the Cecille were required to pay one-half the damage, mounting to $4,063.13. The decree was rendered on January 10, 1906. The libel of the owners of the Multnomah alleged that the barque was at fault in that she was anchored in the fairway, and directly in the path of vessels bound in and out of the harbor of Tacoma, and at a point forbidden by the ordinance of the city of Tacoma to be used as anchorage for vessels, and in that she was allowed to remain there for a space of 24 hours.

The court found that the pilot, in leaving the barque at the place where she was anchored, knowingly violated a reasonable regulation prescribed by lawful authority, and said: "And for the consequences of his act while in the service of the barque as local pilot, the barque is liable to respond in damages. * * * There is no probability whatever that the accident would have happened if the ordinance had not been violated by anchoring the barque in that part of the harbor which I have referred to as the prohibited zone." On August 13, 1907, the appellee, having paid the amount for which it was so adjudged liable to the owners of the Multnomah, brought this libel against the appellants to recover said amount with costs and interest, on account of the negligent, careless, and wrongful act of the appellant Burley in anchoring the barque in the fairway in the path of vessels bound in or out of the harbor in violation of the ordinance of the city, also to recover demurrage for detention until December 12, 1904, in the sum of $3,500, and expenses of litigation in the sum of $1,670. On the final hearing the court allowed demurrage in the sum of $3,422.39 for the 30 days' detention of the Cecille on account of the collision, $4,339.90, the sum the appellee had paid in satisfaction of the decree against the Cecille, and $1,670.02, the cost of litigation and proctor's fees in that suit, aggregating $9,432.31, but left the question of interest to be determined upon the conclusion of further argument to be had thereon in the future. On May 8, 1911, in view of the fact that the long delay in bringing the case to a conclusion was chargeable equally to both parties, the court allowed interest at the rate of 3 per cent. per annum from the date of the filing of the libel, and decreed that the appellee should have and recover from the appellants $7,317.80, together with interest thereon from that date, and its costs and disbursements in the suit.

James M. Ashton, for appellants.

Hughes, McMicken, Dovell & Ramsey and Otto B. Rupp, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] The appellants had notice of the suit of the owners of the Multnomah

against the Amiral Cecille, and the appellant Burley testified as a witness therein. If the present case were not complicated by the defense of the appellants that, when the Cecille was placed at anchor, those who were in charge of her paid out more chain by 15 fathoms than was directed by the appellants, and that thereafter and before the collision she dragged her anchor, we are of the opinion that the former decision would be res judicata as to the liability of the appellants; for when a person is responsible to another, by operation of law or by express contract, and he is fully informed of the claim and that the action is pending, and has full opportunity to defend or participate in the defense, the judgment, if obtained without fraud or collusion, will be conclusive against him, whether he has appeared or not. Washington Gas Co. v. District of Columbia, 161 U. S. 316, 16 Sup. Ct. 564, 40 L. Ed. 712; Oceanic Steam Nav. Co. v. Compagnia Transatlantica Espanola, 144 N. Y. 663, 39 N. E. 360; Robbins v. Chicago, 4 Wall. 657, 18 L. Ed. 427; Lawrence v. Stearns (C. C.) 79 Fed. 878.

But if the appellants had appeared in the former suit, they could not properly have brought within the scope of the investigation the question whether the Cecille disobeyed their instructions, as to the length of the anchor chain, or whether, after being moored, she dragged her anchor so as to swing into the fairway. Those questions would have been immaterial to the determination of the liability of the Cecille to the owners of the Multnomah. The judgment, therefore, does not preclude the appellants from setting up any defense which they could not have interposed in that suit. 23 Cyc. 1270, 1271; Bagley v. General Fire Extinguisher Co., 150 Fed. 284, 80 C. C. A. 172.

[2] But the court below held upon the merits of the case, irrespective of the effect of the prior adjudication, that the appellants were liable for the resulting damages for having placed and left the Cecille at the point where she was, and within the prohibited zone. We find from the evidence no ground to disturb that conclusion. Burley, it is true, testified that he habitually disregarded the ordinance; but the evidence of the harbor master was that the ordinance was enforced and that permission was granted to anchor within the prohibited zone only in cases of necessity. In his testimony given five years after the collision, he stated that if permission had been asked to anchor the Cecille where she was anchored, he would have granted it; but the fact remains that no permission was granted.

Spencer, in his work on Marine Collisions, § 106, states the proposition that where a vessel anchors in an unlawful position, it must suffer the consequences attending a violation of the law. And in The Scioto, 2 Ware, 360, Fed. Cas. No. 12,508, Judge Ware held that a vessel ought not to be moored and lie in the channel or entrance to a port except in cases of necessity; or, if anchored there from necessity, she ought not to remain there longer than the necessity continues. That if she does, and a collision takes place with a vessel entering the harbor, she will be considered in default. In The Pennsylvania, 19 Wall. 125, 22 L. Ed. 148, the court said:

"But when, as in this case, a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. In such a case the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been. Such a rule is necessary to enforce obedience to the mandate of the statute."

The same was held in Richelieu Nav. Co. v. Boston Ins. Co., 136 U. S. 408, 422, 10 Sup. Ct. 934, 34 L. Ed. 398, and Belden v. Chase, 150 U. S. 674, 699, 14 Sup. Ct. 264, 37 L. Ed. 1218..

It is contended that the appellants were compelled by necessity to anchor the barque where they did, the fog being dense, and further progress being dangerous; and the rule is invoked that where necessity requires a vessel to be anchored in an unlawful place or in an exposed situation, if it uses the utmost diligence to avoid collision by making its situation known to passing vessels by every means at hand, it is not chargeable with fault, the exigencies of the case affording justification for what would otherwise be a fault. But the evidence in the case falls short of showing that the barque was of necessity in the place where she was at the time of the collision. At noon on the 10th, the fog lifted, and the weight of the evidence is that there was ample opportunity to move the barque to a safe anchorage. Until safe anchorage was found, the duty of the tug was continuous. The Printer, 164 Fed. 314, 90 C. C. A. 246. We do not say that the tug was required to stand by the barque until the fog lifted, but certainly it should be held that the tug ought to have been within call and within reach when the fog did lift, and an opportunity was given to complete the towage service. The barque was in a prohibited place, and in a place where she threatened danger to vessels pursuing their ordinary course through the fairway. Conceding that the appellants were not at fault in anchoring her at the place where she was anchored, we are of the opinion that the court below committed no error in holding that they were in fault in not removing her therefrom on the following day.

Counsel for the appellants contend that the finding of the trial court, that the weight of the evidence indicated that the barque did not change her location after anchoring and before the collision, is so clearly contrary to the testimony that it should not be permitted to stand, and asserts that no witness so testified except the first mate of the Cecille when introducing the log, and that the entire weight of the evidence is to the contrary. But we find in the record that not only did the first mate so testify, and the log so indicate, but that the second mate testified that the barque did not drag its anchor at any time before the 15th, and that the third mate testified that the barque dragged the anchor but once, and that was in the morning of the 15th. Also, that Capt. Coffin, the master of the steamer Flyer, which plied between Tacoma and Seattle, making four round trips each day, and who passed the Cecille very shortly after she was anchored on the 9th, testified that her position did not change at all on the 9th or the 10th. The evidence on which the appellants mainly rely is certain testimony as to the location where the ship was left. But we agree

with the court below that the appellant Burley must have been mistaken in determining, in the dense fog, the exact position of the Cecille at the time she dropped anchor, and that he erred when he estimated her distance to be within 200 feet of the government buoy, for it is shown that the government buoy was moored in 22 fathoms of water, and the barque's log states that the barque anchored in 40 fathoms. From the evidence as to the depth of the water in the harbor, it is inferable that the barque, instead of being within 200 feet of the position of the government buoy, was approximately 500 feet further out.

Nor do we find merit in the contention that the court, against the weight of the evidence, found that more anchor chain was paid out on the port anchor of the Cecille than Burley commanded. Her log states that 75 fathoms of chain were paid out. Burley testified that when the anchor was let go, more chain ran out than he wanted, and that after the chain was stopped, he went to the forecastle head and asked how many shackles were out, and that the answer was that there were from five to seven; he was inclined to think it was seven. He testified that he told the officers in charge that he wanted only 60 fathoms, or four shackles, of chain out, and that he told them to heave up two full shackles. Elsewhere he stated that the first mate told him that he had out seven shackles, and his concluding testimony on the subject was:

"When I left it was the understanding that when they got steam they were to heave up two full shackles."

Now, if it were true, as Burley testified, that seven shackles had run out, and that he directed them to heave up two shackles, the result was that under his authority the barque had out five shackles, or 75 fathoms, just what is shown by her log. On the appellant's own testimony, the court below was warranted in reaching the conclusion that with Burley's sanction the barque had out 75 fathoms of chain.

The decree is affirmed.