## BLAIR *v.* ST. LOUIS, H. & K. R. CO.[1]

*(Circuit Court, E. D. Missouri. December 8, 1885.)*

1. NOTICE—CONTENTS OF CORPORATE RECORDS.
    A person dealing with a railroad company is not bound to take notice of what its records show.

2. CORPORATIONS — CONVEYANCE OF ENTIRE ASSETS — PRIORITY OF RIGHT AS BETWEEN UNSECURED CREDITORS OF GRANTOR AND MORTGAGE CREDITORS OF GRANTEE.
    A., a corporation, being largely indebted to B. and others, its stockholders and officers, organized C., a new corporation, and transferred to it all of A.'s assets in consideration of stock in C., and of C.'s assuming A.'s liabilities. The transfer was not recorded. C. thereafter mortgaged the property so transferred to D. to secure an issue of bonds. At the time of the execution of the mortgage B.'s claim had not been reduced to judgment, and D. accepted the mortgage without actual notice of said claim. B. has since obtained judgment against C. *Held*, that his lien is inferior to D.'s.

In Equity. Cross-bill of Josiah Fogg and Sarah Parker. For previous opinions, see 17 Fed. Rep. 871; 22 Fed. Rep. 36; 24 Fed. Rep. 148.

*Theodore I. Case*, for complainant in original bill.

*Jas. Carr* and *Geo. D. Reynolds*, for complainants in cross-bill.

BREWER, J., (*orally.*) In the case of the cross-bill of Josiah Fogg against the St. Louis, Hannibal & Keokuk Railroad Company, argued and submitted to me the day before I left St. Louis, a few weeks ago, I will state that I have read the evidence and am prepared to render a decision. The facts in the case are that the St. Louis & Keokuk Railroad Company was organized under a charter of February 15, 1859. After its organization it commenced to do some work.

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

On March 4, 1873, having done a limited amount of work it transferred all its assets to the St. Louis, Hannibal & Keokuk Railroad Company, a new corporation. That new corporation was composed of substantially the same persons, with substantially the same officers, and assumed the debts of the old, to the amount, at least, of $19,000,—enough to cover this claim. Prior to the transfer, the St. Louis & Keokuk Railroad Company had made a contract with the Missouri & Iowa Construction Company for building the road. The same contract was continued by the St. Louis, Hannibal & Keokuk Railroad, the date of the first being April 12, 1872, and the date of the second July 15, 1872. Under the provisions of this contract with the Missouri & Iowa Construction Company a trust deed or mortgage was issued to Dewitt C. Blair and Clarence G. Mitchell, as trustees, the deed being dated October 1, 1875, and providing for bonds at the rate of $20,000 per mile. Fogg, the principal complainant, had done some work in the construction of the road prior to the transfer—prior to March 1st, 1872—for the St. Louis & Keokuk Railroad. His claim was recognized on the books of that corporation, (the old corporation,) and substantially assumed by the new corporation and recognized on its books. There was an intermediate mortgage to the Farmers' Loan & Trust Company, but that does not cut any figure in the case. The trust deed to Dewitt C. Blair and Clarence G. Mitchell was canceled and bonds surrendered, and a new trust deed issued August 1, 1877, to Dewitt C. Blair, as trustee, for $12,000 per mile, and that trust deed is the one which is being foreclosed in this suit.

This claim of Josiah Fogg against both companies and each company remained in parol, was not reduced to judgment, and no suit commenced thereon until the twenty-first of September, 1880, when he brought suit on the law side of this court against both roads, the St. Louis & Keokuk and the St. Louis, Hannibal & Keokuk. That action was dismissed as to the St. Louis, Hannibal & Keokuk, and passed to judgment against the St. Louis & Keokuk, the old corporation, on October 8, 1882. Thereafter he sought, by a bill in equity filed on May 3, 1883, to charge that judgment against the St. Louis & Keokuk Railroad against the St. Louis, Hannibal & Keokuk. This suit passed to a decree against the St. Louis, Hannibal & Keokuk Railroad, May 5, 1884. The transfer from the St. Louis & Keokuk Railroad to the St. Louis, Hannibal & Keokuk Railroad, though reduced to writing, was never placed on record, and the question that comes up now is whether this claim put in decree, on May 5, 1884, against the St. Louis, Hannibal & Keokuk Railroad is a lien upon that road prior to the trust deed executed in 1877 to Dewitt C. Blair, as trustee. It should be stated here, though, that of the bonds issued under that trust deed to Dewitt C. Blair a large proportion of them were not earned or delivered until after 1880, and then in pursuance of a contract with John I. Blair and Moses Taylor for the construction of a certain portion of the road.

Now, it is unquestioned law that a party who holds the legal title to real estate may convey a full title to one who purchases in good faith and pays value; or may mortgage it to one who gives value, and give a prior lien to such mortgagee as against all undisclosed equities. The mortgagee or purchaser will take subordinate to such prior equities if, and only if, he has notice, either actual or constructive, of their existence. In this case there was no constructive notice. The contract between the old and new corporation was not placed on record. There was nothing on record to disclose that Mr. Fogg, or anybody else, had any claim against the St. Louis, Hannibal & Keokuk, or against the St. Louis & Keokuk Railroad. The only place where the information could be obtained outside the lips of witnesses was from the books of the corporation—one or the other. Now, I do not understand that a man, dealing with a private corporation, or even a *quasi* public corporation, like a railroad, is bound to take notice of what the records of that corporation show; for if it be so, no man can deal with a corporation in safety without first having access to and an examination of its books; and the converse of that would be true, that such a corporation is bound to show its records to whomsoever has dealings with it. In a certain sense, the books of a corporation, so far as persons dealing with it are concerned, are their own private records, and are not open to the inspection or knowledge of strangers, and persons are at liberty to deal with a corporation freely without danger of running against equities or claims unless they are disclosed by the public records, just the same as in dealing with an individual. You look to the record title he has, and if it is good you can deal with him on the faith of that in safety, and are not chargeable with notice of any undisclosed equities. The Missouri Statutes provide how a suit may become constructive notice by a filing in the register of deeds' or the recorder's office. There was nothing of the kind done here, and therefore nothing which, within the purview of those statutes, would charge this mortgagee, Dewitt C. Blair, or the principal bondholders, John I. Blair and Moses Taylor, with constructive notice of any claim of Josiah Fogg.

There has been taken, to show actual notice, the depositions of John I. Blair and Dewitt C. Blair. As far as Moses Taylor is concerned, who was with John I. Blair the holder of nearly all the bonds, it appears from the testimony that the business was transacted wholly by John I. Blair. Dewitt C. Blair, the trustee, absolutely knows nothing. Counsel commented upon the remarkable ignorance which he manifests, and seemed loth to believe that any man would take such a trust in such profound and dense ignorance of the facts concerning it. Well, if he had a pecuniary interest in the matter, possibly that criticism might be just, but if he was, as he seems to have been, simply a nominal party in this matter, a trustee having no further duties than to deliver the bonds, and be the instrument of executing the orders of the officers of the company, it is not strange that the matter

made very little impression on his mind, and that his knowledge of the condition of the road, and the contracts made with reference to it, was absolutely nothing. In reference to John I. Blair, his testimony was substantially that his negotiations, or the negotiations of the Lackawanna Iron Company, of which he is president, were originally with this Missouri & Iowa Construction Company; and that in that company were some gentlemen of railroad experience,—railroad builders of known financial ability; and that his contracts were made with that company, upon the faith of these facts; and that the bonds to be received were mainly in the way of a collateral security. Now, it does not seem to me so strange that a man dealing with a construction company, with men with whom he had had business transactions, and in whose financial ability he had confidence, that he, mainly relying on that ability, and on their character, should take the securities which they tendered, relying on their statements concerning them. He had also the statements of the president of this company that the road was free from embarrassments and indebtedness; statements, which it would seem from Mr. Blair's testimony, were not only unreliable, but were coupled with many others since found to be untrue.

After reading this testimony through, from its commencement to the close, (subjected, as both witnesses were, to a searching cross-examination,) it seems to me there is not one syllable to indicate that at the time the interest was acquired by John I. Blair and Moses Taylor in those bonds they had any notice or information or intimation that Josiah Fogg had any claim against the St. Louis, Hannibal & Keokuk Railroad. While counsel criticise this as strange, yet I think an opposing fact is equally strange. If Josiah Fogg had a claim, which it is now proved that he did have, a claim existing prior to March 4, 1873, a claim against both the St. Louis & Keokuk Railroad and the St. Louis, Hannibal & Keokuk Railroad, he permits that to rest unenforced, unreduced to judgment, a mere matter of parol, until the twenty-first of September, 1880, more than seven years. It does not lie in his mouth to reflect or criticise the apparent confidence of other persons dealing with the St. Louis, Hannibal & Keokuk Railroad Company, if he was willing to trust these parties all those years, and take his chances of voluntary payment. I suppose he had reason to believe it would be paid, and therefore did not take any steps to enforce it. It certainly does not lie in his mouth to complain that other people were equally confiding in trusting to the representations of the same officers. It seems to me that there was neither actual nor constructive notice to either the trustee in this mortgage or to the principal bondholders of the existence of this claim at the time they became interested as trustee and as bondholders. It follows from that, that this claim, as well as that of Sarah Parker, similarly situated, is not entitled to priority to the bonds, and it is so ordered.